IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| M.J.S., | : |
| Plaintiff, | : |
| v. | : Case No. 1:25-cv-18 (LAG) |
| Commissioner of Social Security, | : |
| Defendant. | : |

**ORDER AND RECOMMENDATION**

Plaintiff filed this Social Security appeal on January 28, 2025, challenging the Commissioner's final decision denying his disability application, finding him not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). Jurisdiction arises under 42 U.S.C. §§ 405(g) and 1383(c). All administrative remedies have been exhausted.

*Legal Standard*

In reviewing the final decision of the Commissioner, the Court must evaluate whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards to the evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, which is defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Brito v. Comm'r, Soc. Sec. Admin.*, 687 F. App'x 801, 803 (11th Cir. 2017) (first citing *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002); and then quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991) (citations omitted).

"Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). "In contrast, the [Commissioner's] conclusions of law are not presumed valid. The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-46 (citations omitted).

Under the Regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant suffers from a severe impairment which significantly limits his or her ability to carry out basic work activities. Third, the Commissioner evaluates whether the claimant's impairments meet or equal listed impairments in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") will allow a return to past relevant work. Finally, the Commissioner determines whether the claimant's RFC, age, education, and work experience allow for an adjustment to other work.

The claimant "bears the burden at the first four steps," but there is a limited burden shifting at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020). At step five, the burden shifts to the Commissioner to "show 'the existence of . . . jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Id.* at 1279 (alteration in original) (citation omitted). "If the Commissioner makes this showing, 'the burden shifts back to the claimant to prove'" they cannot perform the suggested jobs. *Id.*

*Administrative Proceedings*

On February 18, 2020, Plaintiff filed an application for Disability Insurance Benefits, alleging an initial onset date of November 3, 2019. (Tr. 169, 434). The Social Security Administration denied Plaintiff's claim initially and upon reconsideration. (Tr. 183, 197). Plaintiff requested a hearing (Tr. 238) and appeared before an Administrative Law Judge ("ALJ") on June 6, 2023. (Tr. 201). In a hearing decision dated October 3, 2023, the ALJ determined Plaintiff was not disabled. (Tr. 201-212). The Appeals Council granted Plaintiff's request to review the ALJ's October 3, 2023 decision, and on February 7, 2024, the Appeals Council vacated the decision and remanded to an ALJ for a new hearing. (Tr. 220-221).

On June 27, 2024, the ALJ held a remand hearing. (Tr. 81). On August 14, 2024, the ALJ issued a second decision finding Plaintiff not disabled. (Tr. 81-96). The ALJ's August 14, 2024 decision became the final decision of the Commissioner upon the Appeals Council's denial of review on January 3, 2025. (Tr. 1-4). Plaintiff filed an appeal to this Court on January 28, 2025. (Doc. 1). This matter is ripe for consideration.[1]

*Statement of Facts and Evidence*

Plaintiff was born on January 24, 1976, and was forty-three (43) years old as of the initial onset date. (Tr. 94, 434). The ALJ found that Plaintiff had past relevant work experience as a construction worker. (Tr. 94). The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, but noted that Plaintiff earned $2,151.00 in 2021, and $10,975.00 in 2022. (Tr. 83). The ALJ determined that Plaintiff suffered from the severe

---

[1] On March 31, 2025, the Commissioner filed the answer and administrative transcript in this matter. (Doc. 8). Under this Court's Local Rules, Plaintiff's Brief was due April 30, 2025. *See* M.D. Ga. Civ. L.R. 9.3. Plaintiff did not timely file his Brief. Consequently, on July 10, 2025, the Court ordered Plaintiff to show cause for failing to file a timely Brief. (Doc. 9). On July 31, 2025, Plaintiff filed his response to the Order to show cause and his Brief. (Docs. 10, 11). Having considered Plaintiff's response, the Court finds Plaintiff has **shown cause** and reminds counsel for Plaintiff to familiarize herself with the local rules of courts in which she appears in the future, including in this Court.

impairments of degenerative disc disease of the lumbar spine with radiculopathy, osteoarthritis, PTSD, and anxiety. (Tr. 83). The ALJ found that Plaintiff suffered from non-severe impairments of diabetes mellitus, hypertension, GERD, colitis, melanoma, myopia, OCD, unspecified sleep-wake disorder, and somatic symptom disorder. (Tr. 84). The ALJ determined that Plaintiff

> alleges additional impairments, and the record shows he has been treated or evaluated for symptoms and complaints that appear periodically throughout the record. However, these alleged [non-severe and severe] impairments, considered singly or together, have caused only transient and mild symptoms and limitations, are well controlled with treatment, have not met the continuous 12-month-durational requirement, or are otherwise not adequately supported by the medical evidence in the record

and were thus not severe enough to have more than a minimal impact on Plaintiff's ability to perform basic work activity. (Tr. 85).

Considering the "paragraph B" criteria, the ALJ found that Plaintiff had a moderate limitation in his ability to understand, remember, or apply information; a moderate limitation in his ability to interact with others; a moderate limitation in his ability to concentrate, persist, or maintain pace; and a mild limitation in his ability to adapt or manage himself. (Tr. 86-87). Because the ALJ found that Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ found that the "paragraph B" criteria were not satisfied. (Tr. 87). The ALJ also found the "paragraph C" criteria were not satisfied because the evidence failed to establish the presence of the "paragraph C" criteria. *Id.* Thus, the ALJ found that Plaintiff did not have an impairment or combination of impairments that reached the level of severity contemplated in the listings. (Tr. 85-87).

Considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work, except that he could lift and/or carry twenty (20) pounds occasionally and ten (10) pounds frequently; occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch

or crawl; could never climb ladders, ropes or scaffolds; must avoid concentrated exposure to hazards, such as unprotected heights; have no more than occasional contact with the general public and "team-type" interaction with co-workers; was limited to simple routine unskilled work tasks; and must avoid fast-paced assembly line type work activity. (Tr. 87-94). The ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 94). Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 94-95).

Ultimately, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from November 3, 2019, through August 14, 2024, the date of the ALJ's decision. (Tr. 95-96).

## DISCUSSION

Notwithstanding Plaintiff's complaints about the administrative process and "arbitrary" rules, Plaintiff broadly argues that the ALJ's decision is not supported by substantial evidence. (Doc. 11). Plaintiff seems to rely primarily on an RFC assessment performed by the Blankenship Center, on Plaintiff's subjective statements of disabling limitations, as well as the cases of *Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094 (11th Cir. 2021),[2] and *Pupo v. Commissioner, Social Security Administration*, 17 F.4th 1054 (11th Cir. 2021). *Id.* at 6-15. For several reasons, Plaintiff's contentions are without merit.

First, the Blankenship Center's April 11, 2024 RFC assessment does not show the absence of substantial evidence to support the ALJ's decision – rather, it supports the ALJ's decision. While

---

[2] The Court notes that the panel opinion cited by Plaintiff was withdrawn and replaced. The correct citation is *Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094 (11th Cir. 2021).

acknowledging that Plaintiff had MRI findings that would support Plaintiff's subjective complaints of right low back and buttock pain, the assessment states that Plaintiff

> was very difficult to evaluate due to his constant mild histrionic pain behaviors and his near non-stop reports about how bad his pain is and how he pushes himself anyway, and also due to his inconsistent reports regarding his current disability. For example, he presented himself today as totally disabled due to his severe Low Back and Right Leg pain, but then he said he owns a construction company that he worked full-time when he left law enforcement in 2017, and he still does some part-time construction jobs, but only light ones, like Handy-man-jobs, which allows him [to] stop when his Low Back and Right Leg pain are severe.
>
> . . .
>
> Unfortunately [Plaintiff's] report of severe Low Back pain and occasional Right Leg radicular pain and a near total work disability is diminished by his report that he refused a surgical procedure offered to him that would most likely have resolved his Right Leg symptoms because he said he didn't want to become "shut-down," or be inactive as the Fusion(s) healed, even though by this time he would most likely be functional at a 35-50 lb. level. But he chose to keep his severe and disabling Low Back and Right Leg pain rather than undergo a procedure that could have greatly decreased his alleged pain and made him much more functional, which is not medically logical if his symptoms and his disability are real.

(Tr. 868). The Blankenship Center's RFC analysis also noted that Plaintiff did not appear to demonstrate "organic pain behavior" along with "no involuntary Lumbar Spine muscle guarding at any time" when instructed to select the weight he could lift and carry off the floor. (Tr. 869). Regarding pain and disability, the RFC analysis noted that Plaintiff's score appeared "far out of proportion to the objective medical, clinical, functional and behavioral findings." (Tr. 871). Ultimately, as the ALJ noted (Tr. 92), the Blankenship Center's RFC noted that the "results are considered invalid and may not represent [Plaintiff's] current ability to work at this time" while also noting some impairments and limitations. (Tr. 873).

The record also shows that Dr. Ojelade's January 18, 2022 mental status examination similarly found mild evidence of exaggerated symptoms and noted Plaintiff's continued work in construction. When asked "how he has been able to sustain himself financially" since allegedly

being fired in 2017 as an Assistant Police Chief for "not writing enough tickets[,]" Plaintiff "reported he does freelance construction work for various clients." (Tr. 784-85). Under the header "Overall Validity Statement[,]" Dr. Ojelade noted that

> [w]hen reviewing the supplied medical records and considering [Plaintiff's] presentation, it is unclear whether he is experiencing clinically significant symptoms. Throughout the interview, there was mild evidence that [Plaintiff] exaggerated or magnified his symptoms. Thus, [Plaintiff's] sincerity was deemed questionable. Considering his overall presentation, results of the mental status exam, and review of supplied paperwork, the results of this evaluation should be viewed with caution.

(Tr. 786). While noting the suggestion of moderate impairment in Plaintiff's ability to interact with the public and with supervisors based on Plaintiff's "tangential thought processes[,]" Dr. Ojelade concluded that, while Plaintiff "may have a psychological diagnosis, this would not prevent him from appropriately adapting to the stressors resulting from the demands of being in a work environment, daily functioning, and social interactions. This is particularly the case given that he does odd jobs for others." (Tr. 787). The ALJ found Dr. Ojelade's evaluation partially persuasive but found that the record supported <u>greater</u> limitations than Dr. Ojelade found. (Tr. 94). As the Court discusses next, the ALJ's consideration of these two evaluations is supported by substantial evidence.

As noted by the ALJ, both the Blankenship Center and Dr. Ojelade found some evidence that Plaintiff exaggerated his symptoms. That is consistent with the Court's review of the administrative record. To be sure, there is evidence that Plaintiff suffered from deficits relating to lumbar and hip impairments. For example, on March 17, 2020, an orthopedist found decreased range of motion in Plaintiff's lumbar in flexion and extension, with reduced strength of 3/5. (Tr. 736). Despite these deficits, Plaintiff's gait was normal. (Tr. 735). On August 16, 2021, radiological exams found mild to moderate disc space narrowing in Plaintiff's lumbar spine, but

7

no acute abnormalities. (Tr. 709). And, on August 26, 2021, at a consultative examination with Dr. Williamson, Plaintiff had range of motion deficits at his lumbar spine.[3] (Tr. 712). However, Plaintiff's gait was non-antalgic, he did not require an assistive device, and he demonstrated 5/5 strength in his upper and lower extremities with no range of motion deficits. (Tr. 712, 715).

In fact, the record reflects that, even though Plaintiff alleged and apparently did suffer from pain relating to changes in his lumbar spine, he maintained good mobility and routinely had normal to nearly normal examinations. For example, on December 29, 2019, shortly after the alleged onset date, Plaintiff went to an emergency room for elevated blood sugar. (Tr. 665). Plaintiff did not report back pain or decreased range of motion, and while 1+ pitting edema was seen on examination, Plaintiff also had normal range of motion.[4] (Tr. 665-666). On January 21, 2020, Plaintiff had good range of motion, even with a tender greater trochanter and tight hamstring. (Tr. 686). On January 29, 2020, a chiropractor believed that Plaintiff was

> of good health and is expected to make good progress and recovery with few residuals. He has no complicating factors . . . Based on his history and examination, it is reasonable to believe that his recovery may take about the same length of time as an average patient with an uncomplicated case.

(Tr. 699). Plaintiff continued to have good range of motion on January 31, 2022 with a normal examination. (Tr. 794). The same was true on March 8, 2022. (Tr. 837).

---

[3] Plaintiff also informed Dr. Williamson that he worked in construction in 2021, which was almost two (2) years after the alleged initial onset of disability in 2019. (Tr. 711).

[4] Three observations about Plaintiff's elevated blood sugar. First, the December 29, 2019 emergency room visit appears to be the only instance in the record when Plaintiff received treatment for elevated blood sugar, notwithstanding Plaintiff's statement that he has "uncontrolled diabetes mellitus[.]" (Doc. 11, at 7). Second, at the December 29, 2019 emergency room visit, Plaintiff admitted he had not taken his diabetes medication, he refused a chest x-ray and EKG, and he told the medical providers that he had diabetes prescriptions and pills at home. (Tr. 666). Other than the 1+ pitting edema in his lower extremities, Plaintiff's exam during the December 29, 2019 emergency room visit appears to be completely normal. Third, the edema apparently resolved after the December 29, 2019 emergency room visit. (Tr. 712, 730, 794, 878) (exams spanning from August 26, 2021 through April 18, 2024, noting no edema found).

Plaintiff also points to his need for frequent bathroom breaks. (Doc. 11, at 10). But again, the record shows little evidence in that regard. On November 29, 2021, Plaintiff was evaluated for elevated liver enzymes, and he reported diarrhea. (Tr. 814). To determine the cause of Plaintiff's diarrhea, a colonoscopy was recommended. (Tr. 816). However, Plaintiff declined to have a colonoscopy (Tr. 808), and on March 8, 2022, Plaintiff was "adamant" that he would not complete a stool study, reporting that his stool had improved based on "eating better" and "watching [his] diet[.]" (Tr. 835). The Court finds that this evidence is substantial support for the ALJ's conclusions regarding Plaintiff's limitations.

Second, Plaintiff's reliance on *Simon* is misplaced for several reasons. To begin, Plaintiff does not show how *Simon* applies to this case. Rather, Plaintiff summarily states – without any discussion – that "the ALJ did not articulate adequate reasons for discounting the evidence which supported a finding of disability." (Doc. 11, at 6). Further, *Simon* applies the treating physician rule for claims filed before March 2017. *See Glover v. Comm'r, Soc. Sec. Admin.*, No. 22-10497, 2022 WL 17826364, at *3 n.2 (11th Cir. Dec. 21, 2022) (noting that *Simon* applied the "treating physician rule because the claimant's application was filed in March 2015."). The treating physician rule no longer applies and the ALJ does not assign weight to a physician's opinion before deciding whether to discount it or find it persuasive. *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 894 (11th Cir. 2022) (finding that the amended regulations abrogated the treating physician rules and now require ALJ's "to give a treating physician's opinion no deference and instead to weigh medical opinions based on their persuasiveness."). Finally, the ALJ did weigh the medical opinions and accepted or rejected them based on their persuasiveness. (Tr. 91-94).

Finally, to the extent Plaintiff relies on *Pupo*, that reliance is also misplaced. In *Pupo*, the ALJ stated that he "considered all symptoms," including the claimant's urinary incontinence, but

9

the decision did not demonstrate any evidence that he actually did consider the claimant's urinary incontinence. *Pupo*, 17 F.4th at 1064-65. That was particularly "troubling" to the United States Court of Appeals for the Eleventh Circuit because the claimant had seen

> numerous gynecologists and a urologist about her incontinence and uterine prolapse; she complained about incontinence to multiple providers, noting that she had to wear five pads a day; she was referred to have surgery in 2014 but was unable to receive medical clearance; she complained of incontinence when coughing or lifting weight; she had a positive cough test; and treatment through medication had failed.

*Id.* at 1065. Because the ALJ in *Pupo* failed to even mention incontinence and its effects on the claimant's RFC, the Eleventh Circuit reversed and remanded. *Id.* at 1065.

In this case, however, there is a paucity of evidence in the medical record of Plaintiff's diarrhea. As discussed above, Plaintiff reported worsening diarrhea, but he refused his medical provider's recommendations that he undergo two types of diagnostic tests – a colonoscopy and a stool study – and he reported that the condition was improved with diet. Not only that, but the ALJ noted Plaintiff's loose stools and found they were non-severe for a host of reasons, including that they were transient, well controlled, and did not meet the 12-month-duration requirement. (Tr. 85).

Plaintiff largely supports his arguments by pointing to other evidence in the record. However, this method of proceeding in a Social Security appeal misses the mark because the "issue before [the Court] is whether there was substantial evidence to support the [ALJ's] decision, not whether there could be substantial evidence in the record to support a different decision." *Rodriguez ex rel. R.C. v. Berryhill*, No. 20-14458, 2021 WL 5023951, at *7 (11th Cir. Oct. 29, 2021) (citing *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1282 (11th Cir. 2004)). To be sure, there is some evidence in the record to support Plaintiff's allegations. However, "[u]nder a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence

10

supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)). Plaintiff has not done so. Having reviewed the entire record, the evidence therein, and the ALJ's decision, the Court finds that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

As the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The district judge shall make a de novo determination as to those portions of this Recommendation to which objection is made; all other portions of this Recommendation may be reviewed by the district judge for clear error. Any objection is limited in length to TWENTY (20) PAGES. *See* M.D. GA. L.R. 7.4.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED and RECOMMENDED**, this 16th day of December, 2025.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE